## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MIA A.,

      Plaintiff,

                                **Case No. 1:20-cv-16509**

    v.                           **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

      Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Mia A. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.   PROCEDURAL HISTORY

On February 7, 2017, Plaintiff filed an application for disability insurance benefits, alleging that she has been disabled since February 12, 2017. R. 571, 586, 689−92. That

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

application was denied initially and upon reconsideration. R. 589−93, 595−97. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 599−600. Administrative Law Judge Scott Massengill ("ALJ Massengill") held a hearing on May 1, 2019, in which Plaintiff, who was represented by counsel, participated. R. 542−54. Counsel and ALJ Massengill agreed to postpone the hearing to provide an opportunity for Plaintiff to file an application for supplemental security income under Title XVI. *Id*.

On May 7, 2017, Plaintiff filed an application for supplemental security income, again alleging that she has been disabled since February 12, 2017. R. 20.[2] That application was accelerated to the hearing level. R. 20, 550. Administrative Law Judge Lisa Hibner ("the ALJ") held a hearing on both applications on September 12, 2019, at which Plaintiff, who was again represented by counsel, testified, as did a vocational expert. R. 501−40. In a decision dated November 4, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 12, 2017, the alleged disability onset date, through the date of that decision. R. 20−36. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on October 27, 2020. R. 1−6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 1, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10.[3] On April 6, 2021, the case was reassigned to the undersigned. ECF No. 11. The matter is now ripe for disposition.

---

[2] Only a copy of the application for disability insurance benefits appears in the record. R. 689−92.

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc.*

*Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the

plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 51 years old on her alleged disability onset date. R. 35. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between February 12, 2017, her alleged disability onset date, and the date of the decision. R. 23.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: posttraumatic stress disorder, anxiety, and spinal disorders. *Id.*  The ALJ also found that Plaintiff's diagnosed right knee impairment was not severe. R. 24.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 24–27.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 28–34. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a customer compliance clerk and van driver. R. 34–35.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 700,00 jobs as a bagger; approximately 70,000 jobs as a finishing machine operator; approximately 70,000 jobs as a produce weigher—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 36. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 12, 2017, her alleged disability onset date, through the date of the decision. *Id.*

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the

Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 16. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 15.

## IV.    DISCUSSION

### A.    RFC

Plaintiff argues that the ALJ erred when crafting her physical and mental RFC. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 5–12; *Plaintiff's Reply Brief*, ECF No. 16, pp. 1–4. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not

8

unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work, as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: Occasionally climb ramps or stairs. Never climb ladders, ropes or scaffolds. Occasionally stoop, balance, crouch, kneel or crawl. Work limited to simple, routine repetitive tasks. Work in a low stress job, defined as having only occasional decision-making and only occasional changes in the work setting. Work with occasional judgment required on the job. Frequent reaching, fingering and handling on the left; no requirement for driving.

R. 28.

In making this determination, the ALJ detailed years of record evidence regarding Plaintiff's physical impairments, including, *inter alia*, Plaintiff's degenerative disc disease with radiculopathy; medical records indicating that "other than cervical spinal surgery that occurred in 2017 without reported complication, the record reveals an otherwise conservative course of treatment[,]" including, *inter alia*, epidural injections, physical therapy, and chiropractic manipulation prior to the above-referenced surgery, and medication prior to and since that surgery, "without current, consistent use of medication, as per the hearing testimony" and only sporadic emergency room presentations for neck/head or extremity area pain secondary to motor vehicle accidents in June 2010 and February 2017 and a fall in August 2018 and these presentations resulted in discharges in improved or stable condition the same day as presentation; the fact that Plaintiff had "generally normal, with only minimal findings since 2017[,]" including, *inter alia*, an orthopedic consultative examination performed by Carlos Cornejo, D.O., in 2017 that revealed that Plaintiff was not in acute distress, without any noted assistive device

use, atrophy, edema, swelling, joint laxity, joint instability, or deformity as well as symmetrical reflexes, normal ranges of motion globally, normal strength, normal sensation, a normal gait, good hand-eye coordination, and negative Spurling and straight leg raise testing; during this orthopedic consultative examination, Plaintiff was "comfortable in the seated position during the interview", and she was able to get on and off the examining table, dress herself, heel/toe walk "without difficulty", squat "without difficulty", and extend her fingers, make a fist, and oppose her thumbs bilaterally; treatment records from 2017 and 2018 that revealed, *inter alia*, that Plaintiff was alert, fully oriented and/or not in any noted distress, without any noted assistive device use, atrophy, edema, swelling, joint laxity, joint instability, reflex asymmetry, or deformity as well as documented findings of normal ranges of motion (neck, back, extremities), intact cranial nerves, no motor deficits, no sensory deficits, and/or no noted motor, strength, sensory, arm/hand use, or gait deficits or abnormalities; diagnostic imaging in February 2017, x-rays of the cervical and lumbar spine [that] revealed degenerative changes, without any noted fractures or dislocations; a March 2017 MRI of the cervical spine that revealed, in addition to degenerative changes, only mild spinal cord abutment with impingement at C5-6; a March 2017 MRI of the lumbar spine that revealed "severe" facet arthrosis and up to "severe" neural foraminal narrowing accompanying the above stated lumbar spinal degenerative changes, but which also revealed only "moderate" central canal stenosis and no noted nerve root impingement or thecal sac compromise; an August 2018 CT scan of the cervical spinal that revealed post-operative changes without any noted hardware failure; and February 2017 x-rays of the left shoulder that revealed no evidence of recent fracture or dislocation. R. 29−30. The ALJ went on to explain the RFC as it relates to Plaintiff's physical impairments as follows:

> Simply stated, despite symptoms, other than cervical spinal surgery that occurred in 2017 without reported complication, the record reveals an otherwise

conservative course of treatment, and generally normal, with only minimal findings since 2017. Further, the extent of the claimant's alleged limitations is not entirely consistent with the same.

Therefore, this evidence, including objective findings, course of treatment, and the claimant's actions and admissions fully supports the exertional, postural, and reaching, fingering and handling on the left limitations in the assessed residual functional capacity. Further, the undersigned accounted for the claimant's self-reports of no longer driving and not having a valid driver's license, as it reportedly expired, with the assessed no driving limitation. Moreover, this evidence does not support the assessment of different or additional limitations. Additionally, the undersigned accounted for the claimant's non-severe impairment (right knee dysfunction), subjective allegations (including, but not limited to, pain), and potential medication side effects when making this assessment.

R. 30.

The ALJ also considered extensive evidence regarding Plaintiff's mental impairments, including, *inter alia*, Plaintiff's history of mental health symptoms dating back to approximately 2014 in the context of a history of multiple motor vehicle accidents and more recent diagnoses of posttraumatic stress disorder and anxiety, and variously described as panic disorder, agoraphobia, and depressive disorder. The ALJ found that, despite symptoms, the record revealed only a  conservative course of mental health treatment, and generally normal, or only minimal, findings since 2017; that Plaintiff's conservative course of mental health treatment consisted of outpatient mental health counseling/therapy, without any current use of medication and no history of inpatient psychiatric admissions or emergency room presentations due to mental health; that the generally normal or minimal findings since 2017 include, *inter alia*, a July 2017 consultative psychological examination performed by Lawrence Mintzer, Ph.D., revealed, among other things, that Plaintiff was fully oriented, was appropriately groomed, had with normal, coherent speech with appropriate motor activity, had average intelligence, goal-directed thought processes, fair abstract thinking, a good simple calculations ability, good concentration, good impulse control, fairly good judgment, and good insight, without any noted hallucinations,

11

suicidal ideation, or homicidal ideation, and that Plaintiff completed serial sevens at an average

speed without any errors, correctly spelled "world" both forwards and backwards, recalled

personal historical information, recalled what she had had for dinner the prior day, and repeated

five digits forward; that a December 2017 worker's compensation psychological evaluation

performed by Chris Winfrey, M.D., revealed, *inter alia*, that Plaintiff was fully oriented,

engaging and cooperative and had fair memory, fair concentration, fair judgment, and intact

reality testing and without any noted hallucinations, suicidal ideation, or homicidal ideation; that

mental health treatment records since 2017 revealed, *inter alia*, that Plaintiff was alert, fully

oriented, engaged and/or receptive and demonstrated a good mood, normal speech, normal motor

activity, average intellect, logical thought processes, intact insight, normal judgment, and/or

normal impulse control, without any noted hallucinations, suicidal ideation, or homicidal

ideation. R. 30−32. The ALJ went on to explain the RFC as it relates to Plaintiff's mental

impairments as follows:

> Simply stated, despite symptoms, the record reveals a conservative course of mental health treatment, and generally normal, with only minimal findings since 2017. Further, the extent of the claimant's alleged limitations is not entirely consistent with the same.

> Therefore, this evidence, including objective findings, course of treatment, and the claimant's actions and admissions fully supports the mental limitations in the assessed residual functional capacity. Further, the undersigned accounted for the claimant's self-reported mental health symptoms secondary to her reported history of multiple motor vehicle accidents with the above-stated no driving limitation. Moreover, this evidence does not support the assessment of different or additional limitations. Additionally, the undersigned accounted for the claimant's subjective allegations (including, but not limited to, pain) and potential medication side effects when making this assessment. . . .

> Therefore, taking into consideration the claimant's severe and non-severe impairments, subjective allegations, and potential medication side effects, this evidence fully supports the assessed residual functional capacity. It does not support the assessment of different or additional limitations.

12

R. 32; *see also* R. 34 ("In sum, the above residual functional capacity assessment is supported by the record, including objective findings, course of treatment, the claimant's actions and admissions, and the inconsistencies in the record with regard to the claimant's allegations."). In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, challenges this determination on a number of bases. As to the mental RFC, Plaintiff first contends that the ALJ "failed to consider at any stage of the analysis" Dr. Mintzer's diagnoses of depressive disorder, social anxiety disorder, and agoraphobia, or Dr. Winfrey's diagnosis of major depressive disorder and "the impact they [the diagnosed disorders] have upon the Plaintiff's ability to perform work functions." *Plaintiff's Memorandum of Law*, ECF No. 14, p. 9 (citing R. 998−1002, 1010−13); *see also Plaintiff's Reply Brief*, ECF No. 16, pp. 1−4. Plaintiff's arguments are not well taken. As a preliminary matter, the ALJ specifically considered Plaintiff's diagnoses of agoraphobia and depressive disorder at step four when crafting the RFC. R. 30. The ALJ also considered the findings and opinions of Dr. Mintzer and Dr. Winfrey, but assigned only "some weight" to Dr. Mintzer's opinion, and "no weight" to Dr. Winfrey's opinion, reasoning as follows:

> The psychological consultative examiner [Dr. Mintzer] opined that the claimant's "limitations are moderate to severe in degree" (Exhibit 13F). While the basis for this opinion was an examination of the claimant, it is vague and fails to set forth specific functional limitations. Further, the claimant having "severe" mental health limitations is inconsistent with the record, including the record failing to reveal, for example, a treatment history consisting of inpatient psychiatric admissions (Exhibits 1F-19F). However, the claimant otherwise having only "moderate" mental health limitations, while vague, is generally consistent with the record. For example, this examiner's exam revealed a depressed, crying, and constricted mood or affect, self-reported ideas of reference, "trouble getting her words", and the abilities to recall zero of three objects after a delay and to repeat only three digits backward (Exhibit 13F). However, this exam otherwise revealed a broad range of

13

normal mental status findings, as detailed at length above (Exhibit 13F). Therefore, in light of the above, the undersigned gives some weight to this opinion.

The examiner that conducted the above-stated psychological evaluation for the purposes for worker's compensation [Dr. Winfrey] opined that the claimant is unable to work (Exhibit 15F). While the basis for this opinion was an exam of the claimant, this opinion is vague, fails to set forth specific functional limitations, and addresses an issue reserved to the Commissioner (whether the claimant can work/is disabled). Therefore, in light of the above, the undersigned gives no weight to this opinion.

R. 34. Notably, Plaintiff does not challenge the ALJ's consideration of Dr. Winfrey's opinion in this regard. *See generally Plaintiff's Memorandum of Law*, ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 16; *see also See Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 118 (3d Cir. 2020) ("Whether or not Louis can perform occupational duties is a legal determination reserved for the Commissioner.") (citing 20 C.F.R. § 404.1527(d)); *Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008) ("[T]he ALJ was not obligated to give significant weight to Dr. Kumar's opinion as to Zonak's ability to work because the opinion related to the ultimate issue of disability—an issue reserved exclusively to the Commissioner."). Plaintiff complains that, when finding that Plaintiff's mental limitations were not severe, the ALJ erred in considering that Plaintiff had no inpatient hospitalizations; however, the ALJ also specifically explained that Dr. Mintzer's examination revealed a broad range of normal mental status findings, as previously noted. R. 34.

Moreover, Plaintiff does not identify—nor can the Court locate—any specific functional limitations flowing from the diagnoses made by Dr. Mintzer and Dr. Winfrey that the ALJ failed to include in the RFC. *See generally Plaintiff's Memorandum of Law*, ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 16; *see also* R. 28–34. Without more, these diagnoses, therefore, do not establish any functional limitations. *Cf. Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) ("A diagnosis alone, however, does not demonstrate disability.") (citing *Petition of*

14

*Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Notably, as previously discussed, an ALJ need include in the RFC only "credibly established" limitations. *Rutherford*, 399 F.3d at 554.

Plaintiff next contends that the RFC "is further deficient because it is inconsistent with the ALJ's findings at Step 3 of the analysis." *Plaintiff's Memorandum of Law*, ECF No. 14, p. 9; *see also Plaintiff's Reply Brief*, ECF No. 16, p. 2. Plaintiff specifically argues that, at step three of the sequential evaluation, the ALJ found that Plaintiff had a mild limitation in her ability to interact with others, but that the RFC determination "failed to include any restriction that would speak to the Plaintiff's ability to interact with coworkers, supervisors, or the public." *Plaintiff's Memorandum of Law*, ECF No. 14, p. 9 (citing R. 26, 28). Plaintiff therefore complains that "restrictions found by the ALJ at one stage of the analysis are not reflected at a later stage" and, "[t]herefore, the ALJ's finding at Step 3 indicating mild limitation in the Plaintiff's ability to interact with others is in direct conflict with the RFC finding." *Id*. Plaintiff's arguments are not well taken. The ALJ specifically considered that Plaintiff had no problems interacting with others when crafting the RFC determination. R. 32. Specifically, the ALJ made similar findings regarding Plaintiff's lack of difficulty in interacting with others at both steps three and four. *Compare* R. 26 ("[S]he also reported having no problems getting along with others, getting along very well with authority figures, never losing a job due to problems dealing with others, going to the store with family (Wal-Mart), attending mental health appointments on a regular basis, and taking a car service to mental health appointments."), *with* R. 32 ("She also reported having no

problems getting along with others, getting along very well with authority figures, never losing a

job due to problems dealing with others, and handling changes in routine okay. She further

reported performing a wide variety of activities, including . . . going to the store (Wal-Mart),

attending mental health appointments on a regular basis, and taking a car service to mental health

appointments."). Notably, the United States Court of Appeals for the Third Circuit has instructed

that "no incantations are required at steps four and five simply because a particular finding has

been made at steps two and three. Those portions of the disability analysis serve distinct

purposes and may be expressed in different ways." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209

(3d Cir. 2019). Because the RFC is the most that a claimant can do despite her limitations, the

RFC "'requires a more detailed assessment [of the areas of functional limitation] by itemizing

various functions contained in the broad [functional limitation] categories'" and, "unlike the

findings at steps two and three, the RFC 'must be expressed in terms of work-related

functions[.]'" *Id.* (quoting SSR 96-8P, at *4, 6). "In short, the findings at steps two and three will

not necessarily translate to the language used at steps four and five." *Id.* Moreover, as noted

earlier, an ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554.

Based on this record, the Court cannot conclude that there was an "inconsistency" between the

step three and step four findings in this regard or that the ALJ committed reversible error in

failing to include any functional limitations in the RFC where Plaintiff admitted that she had no

problems getting along with others, got along very well with authority figures, and never lost a

job due to problems dealing with others. *Id.*; *see also* R. 26, 28, 32; *Hess*, 931 F.3d at 209;

*Marchionna v. Comm'r of Soc. Sec.*, No. 13-329, 2015 WL 12550917, at *2 (W.D. Pa. Jan. 29,

2015) (finding "no error with respect to the failure to include social functioning limitations in the

RFC" where the Plaintiff had only "mild difficulties" in social functioning and a medical opinion

to which the ALJ assigned great weight found that "Plaintiff was not significantly limited in any area of social interaction or adaptation"); *cf. D.C. v. Comm'r of Soc. Sec.*, No. CV 20-2484, 2021 WL 1851830, at *5–6 (D.N.J. May 10, 2021) ("[T]he Commissioner is correct that an RFC assessment does not need to contain in-depth analysis on mental impairments when the ALJ finds earlier in his opinion that a claimant's mental impairments are no greater than mild. . . . Thus, even if the ALJ's failure to analyze the mild mental limitations constituted an error, a dubious proposition, it still does not warrant reversal.").

Plaintiff also complains that, at step three of the sequential evaluation, the ALJ improperly found only moderate limitations in the areas of understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. *Plaintiff's Memorandum of Law*, ECF No. 14, p. 10 (citing R. 25–27). Plaintiff points to her subjective statements and to objective evidence specifically considered by the ALJ, arguing that this evidence supports a marked or extreme limitation in these two functional areas. *Id.* (citing R. 25–27). Plaintiff's arguments are not well taken. As a preliminary matter, to the extent that Plaintiff relies on her subjective statements, the ALJ properly discounted those statements for the reasons discussed later in this decision. To the extent that Plaintiff contends that the objective evidence that the ALJ considered warrants a finding of a "marked" or an "extreme" limitation in these two functional areas, Plaintiff is essentially asking this Court to impermissibly reweigh the evidence. *See id.*; *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."). In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir.

17

2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Hatton v. Comm'r of Soc. Sec. Admin*., 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Finally, Plaintiff argues that ALJ "improperly dismissed the Plaintiff's right knee dysfunction as nonsevere at step two" and that the "failure to consider this impairment beyond Step 2 of the analysis leaves the RFC finding incomplete[.]" *Plaintiff's Memorandum of Law*, ECF No. 14, p. 11. This Court disagrees. First, the ALJ properly explained at step two of the sequential evaluation why she did not find Plaintiff's right knee dysfunction to be severe:

> The undersigned notes, the record also reveals right knee dysfunction (Exhibit 11F/6). Specifically, a right knee MRI in April 2017 revealed chondromalacia patella with small joint effusion, sub-cortical cystic changes, chondral thinning, heterogeneity in the medial femoral tibial compartment, and findings suggestive of osteonecrosis (Exhibit 11F/6). However, this MRI failed to reveal any noted tearing, fracture, or dislocation (Exhibit 11F/6). Further, unlike the case with the claimant's spinal disorders (Exhibit 16F), the record fails to reveal a history of right knee treatment via surgery (Exhibit 1F-19F). In other words, the record fails to reveal an aggressive course of treatment for a right knee disorder, and symptoms, when alleged, were treated conservatively in the context of, or secondary to, the claimant's spinal disorders (Exhibits 1F-19F). Simply stated, right knee dysfunction has caused only transient and/or mild symptoms and limitations, at most. Accordingly, right knee dysfunction does not constitute a severe medically determinable impairment because it does not more than minimally limit the claimant's ability to engage in work-related activities. (20 CFR 404.1520(c), 20 CFR 404.1522, 20 CFR 416.920(c), 20 CFR 416.922; SSR 85-28).

R. 24. The Court finds no error with the ALJ's analysis in this regard.

Second, even if the ALJ erred at not finding Plaintiff's right knee dysfunction a severe impairment at step two, any such error was harmless because the ALJ went to consider this impairment at step four when crafting the RFC. *See* R. 24 ("[T]he undersigned has reviewed and considered all severe and non-severe impairments in formulating the residual functional capacity below, and, where appropriate, the undersigned has included limitations to address the claimant's

non-severe impairment and subjective complaints"), 30 ("the undersigned accounted for the claimant's non-severe impairment (right knee dysfunction), subjective allegations (including, but not limited to, pain), and potential medication side effects when making this assessment"); *see also Auriemma v. Colvin*, No. 13-5947, 2015 WL 5097902, at *6 (D.N.J. Aug. 31, 2015) ("So long as the ALJ rules in Plaintiff's favor by finding that any single impairment meets the severity threshold required at step two, any error the ALJ made in this determination was harmless.") (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless.")); *Hicks v. Colvin*, No. 2:15-cv-07221, 2016 WL 8674251, at *8 (D.N.J. Oct. 14, 2016) ("Even if the ALJ had in fact erred with respect to one of the impairments that she found to be non-severe, such error would be harmless since she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in her RFC finding."). Notably, at step four, the ALJ specifically considered evidence relevant to Plaintiff's right knee dysfunction, including Plaintiff's ability to walk without an assistive device; normal gait; ability to walk heel/toe without difficulty; normal ranges of motion globally, including extremities; normal strength; normal sensation; no noted motor, strength, or gait deficiencies or abnormalities; no noted atrophy, edema, swelling, joint laxity, joint instability, or deformity; and that Plaintiff was comfortable in a seated position throughout an interview. R. 29–30, 33. Accordingly, Plaintiff's arguments based on her right knee dysfunction do not serve as a basis for remand of this action.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record.

## B.    Subjective Statements

Plaintiff also challenges the ALJ's consideration of her subjective complaints. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 12−16; *Plaintiff's Reply Brief*, ECF No. 16, p. 4. "Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).   Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side

20

effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms);  20 C.F.R. § 416.929(c)(3)(same). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[4]

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 28, 32, 34. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 28. As previously discussed, the ALJ detailed years of medical evidence and record testimony to support her findings. R. 28−34. The ALJ also went on to explain as follows:

---

[4] SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility."  SSR 16-3p.  However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

Simply stated, despite symptoms, the record reveals a conservative course of mental health treatment, and generally normal, with only minimal findings since 2017. Further, the extent of the claimant's alleged limitations is not entirely consistent with the same.

Therefore, this evidence, including objective findings, course of treatment, and the claimant's actions and admissions fully supports the mental limitations in the assessed residual functional capacity. Further, the undersigned accounted for the claimant's self-reported mental health symptoms secondary to her reported history of multiple motor vehicle accident with the above stated no driving limitation. Moreover, this evidence does not support the assessment of different or additional limitations. Additionally, the undersigned accounted for the claimant's subjective allegations (including, but not limited to, pain) and potential medication side effects when making this assessment.

In addition, the claimant's actions and admissions are also not entirely consistent with the extent of her alleged limitations. For example, the claimant reported not doing any household chores, having any hobbies, or driving anymore in the context of her driver's license having expired. She also reported being able to pay attention for a "couple minutes", not being able to finish what she starts, reading things "over and over" at times, not spending time with others, and not handling stress well. However, she further reported completing two years of college, being able to manage finances, following instructions good or okay, and not requiring reminders to take care of personal needs, take medicine or go places. She also reported having no problems getting along with others, getting along very well with authority figures, never losing a job due to problems dealing with others, and handling changes in routine okay. She further reported performing a wide variety of activities, including performing personal care activities, preparing simple meals, using a fork/knife to eat, doing laundry, making her bed, watching television, and using an I-Pad. She additionally reported going to the store (Wal-Mart), attending mental health appointments on a regular basis, and taking a car service to mental health appointments. (Exhibits 1E; 4E; Hearing Testimony). Simply stated, the claimant's actions and admissions reveal that she is not as limited as she alleged from a physical or mental health standpoint.

Therefore, taking into consideration the claimant's severe and non-severe impairments, subjective allegations, and potential medication side effects, this evidence fully supports the assessed residual functional capacity. It does not support the assessment of different or additional limitations.

R. 32. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff, however, challenges the ALJ's consideration in this regard, arguing first that the ALJ improperly discounted the severity of her statements when the ALJ wrongly characterized Plaintiff's treatment of her physical ailments as "conservative" even though Plaintiff had fusion surgery. *Plaintiff's Memorandum of Law*, ECF No. 14, p. 14. Plaintiff's argument is not well taken. As detailed above, the ALJ found that "*other than cervical spinal surgery* that occurred in 2017 without reported complication, the record reveals an *otherwise conservative course of treatment*, and generally normal, with only minimal findings since 2017." R. 29 (emphasis added), 30 (same). The Court finds that this a fair characterization of the treatment record: The ALJ specifically acknowledged the fusion surgery, but noted that since that procedure in 2017, Plaintiff's treatment has been conservative and the record since that time generally reflects only normal findings. R. 29–30. Moreover, the ALJ did not err when considering Plaintiff's conservative treatment when assessing her subjective statements. *See* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v); *Phillips v. Barnhart*, 91 F. App'x 775, 782 (3d Cir. 2004) (considering the claimant's conservative treatment history following surgery as a factor that supported the ALJ's determination to discount the claimant's subjective complaints).  Based on this record, Plaintiff has not persuaded this Court that the ALJ improperly characterized Plaintiff's treatment since her fusion surgery in 2017 as conservative or that consideration of that conservative treatment warrants remand. *See id.*; *cf. Schmidt v. Comm'r Soc. Sec.*, 465 F. App'x 193, 198 (3d Cir. 2012) (finding that the "ALJ explained his reasons for discrediting [the claimant's] subjective testimony and pointed to several objective medical findings that contradicted [the claimant's] subjective complaints" where the claimant underwent back surgery in 2007, and, thereafter, "there was objective medical evidence that did not support [the

claimant's] subjective complaints of disabling pain[,]" including, *inter alia*, that Plaintiff's two physicians "continued to prescribe conservative care throughout this period").

Plaintiff next points to objective testing evidence that she believes supports her subjective statements. *Plaintiff's Memorandum of Law*, ECF No. 14, p. 14 (citing R. 971–77). This Court disagrees. Plaintiff cites to testing performed on May 10, 2017, R. 921–77, *i.e.*, well before Plaintiff's spinal surgery in November 2017, R. 29–30, 1021–25, after which she received only conservative care, R. 29–30.

Plaintiff also characterizes as error the "ALJ's rejection of the Plaintiff's statements" because she did not undergo a second spinal surgery. *Plaintiff's Memorandum of Law*, ECF No. 14, p. 15. This Court again disagrees. First, it was reasonable for the ALJ to consider the fact that Plaintiff did not undergo a second spinal surgery when evaluating Plaintiff's subjective complaints, particularly as it suggests that the conservative treatment following her spinal surgery in November 2017 was effective. *See* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v); *Phillips*, 91 F. App'x at 782. Second, this was but one factor that the ALJ considered when assessing Plaintiff's subjective statements.

Plaintiff goes on to challenge the ALJ's consideration of her subjective statements regarding her mental impairments, complaining first that the ALJ improperly discounted her statements because Plaintiff had not been hospitalized on an in-patient basis. *Plaintiff's Memorandum of Law*, ECF No. 14, p. 15. Plaintiff's argument is not well taken. The ALJ did not err when considering that Plaintiff received only "a conservative course of mental health treatment consisting of outpatient mental health counseling/therapy [], without any current use of medication for mental health [] and no history of inpatient psychiatric admissions or emergency room presentations due to mental health[.]" R. 31; *see Henderson v. Saul*, No. 1:19-CV-811,

2020 WL 2556915, at *11 (M.D. Pa. May 20, 2020) (finding that substantial evidence supported the ALJ's consideration of the claimant's subjective statements where, *inter alia*, "concerning *her mental impairments, the ALJ reasoned that Henderson had generally treated her impairments with medication and conservative outpatient therapy*. The ALJ further noted that *Henderson never required inpatient psychiatric intervention or any other significant treatment*, and that she generally showed intact attention, concentration and memory and fair insight and judgment. The ALJ examined Henderson's treatment notes, which indicated that her depression and her pain was being managed by medications and outpatient therapy") (emphasis added); *Sincavage v. Saul*, No. 1:19-CV-888, 2020 WL 2794608, at *14 (M.D. Pa. May 29, 2020) (finding that substantial evidence supported ALJ's findings where the claimant's "*conservative treatment for* her pain and *her mental health impairments, and the fact that her pain and depression was being managed during the relevant time period*, the ALJ found that [the claimant] could perform less than a full range of light work") (emphasis added); *Iturralde v. Berryhill*, No. 3:16-1597, 2018 WL 1465273, at *8 (M.D. Pa. Mar. 1, 2018), *report and recommendation adopted*, No. 3:16-1597, 2018 WL 1453181 (M.D. Pa. Mar. 23, 2018) (upholding ALJ credibility finding based in part on "conservative treatment measures and [lack of] inpatient psychiatric treatment or hospitalization").

Plaintiff next contends that the record reflects regular, ongoing psychiatric treatment and that she testified at the September 2019 hearing that she had not been to counseling sessions since April 2019 because of difficulty with insurance coverage. *Plaintiff's Memorandum of Law*, ECF No. 14, p. 15. To the extent that Plaintiff apparently suggests that this evidence undermines the ALJ's evaluation of Plaintiff's subjective statements, this Court disagrees. As previously discussed, the ALJ expressly considered that Plaintiff was participating in outpatient mental

health counseling/therapy, noting that that therapy was part of Plaintiff's conservative mental health treatment. R. 31–32. Moreover, the Court cannot say that the ALJ erred in characterizing Plaintiff's mental health treatment as conservative for the reasons previously noted. Plaintiff has not persuaded that the ALJ erred in the consideration of Plaintiff's mental health counseling in this regard.

For all these reasons, the Court concludes that the ALJ sufficiently explained her reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record. Those findings are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id.*

### C.   Third-Party Statements

Finally, Plaintiff contends that the ALJ erred when considering the third-party statements of Plaintiff's daughter, Aminah Hatton. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 16–17; *Plaintiff's Reply Brief*, ECF No. 16, p. 5. The Court of Appeals for the Third Circuit expects an ALJ to address the testimony of third-party witnesses. *Burnett,* 220 F.3d at 122; *see also* SSR 16-3p (providing that an ALJ must consider "the entire case record, including . . . information provided by . . . other persons").

In the case presently before the Court, the ALJ considered these statements, but assigned "limited weight" to those statements, reasoning as follows:

> As for the opinion evidence, the undersigned gives limited weight to the opinion of Aminah Hatton, the claimant's daughter, who completed a Third Party Function Report (Exhibit 6E). As the claimant's daughter, she would generally be, for example, familiar with the claimant's daily living and social activities. However, her observations are based on causal observation rather than objective medical testing and do not outweigh the accumulated medical evidence regarding the extent to which the claimant's limitations can reasonably be considered a result of the claimant's determinable impairments.

R. 32. Plaintiff argues that the ALJ "rejected" these statements when finding that such statements were based on "casual observations" and not "objective findings." *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 16 –17 (citations omitted). Plaintiff's arguments are not well taken. As a preliminary matter, the ALJ assigned "limited weight" and did not "reject[]" Ms. Hatton's statements, as Plaintiff contends. To the extent that the ALJ erred in discounting the statements to some extent, Plaintiff has not explained how this error harmed her. She generally refers to Ms. Hatton's "observations regarding the nature and extent of Plaintiff's limitations" and her "statements" that "comport strongly with the Plaintiff's own statements and those of the examining physicians[,]" and argues that those statements "support a finding of disability[.]" *Id.* at 16 (citing, *inter alia*, R. 745–52). However, Plaintiff never identifies the particular observations and statements or otherwise explains what these observations and statements reveal or how they support Plaintiff's subjective statements or support a finding of disability. *See id.* The Court will not hunt through the cited pages to find evidence or construct Plaintiff's arguments for her. *See Atkins v. Comm'r Soc. Sec.*, 810 F. App'x 122, 129 (3d Cir. 2020) ("'[J]udges are not like pigs, hunting for truffles buried in the record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)) (internal citation omitted)); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently

instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments."). Plaintiff, who bears the burden of proof at step four, does not offer any substantive analysis to support this conclusory assertion. *See id.* The Court therefore finds no merit in Plaintiff's undeveloped argument in this regard. *Cf Atkins*, 810 F. App'x at 129 ("Lacking any direction from [the claimant] as to the specific [evidence] at issue, we will not scour the record to attempt to discern [the claimant's] position."); *Wright v. Comm'r Soc. Sec.*, 783 F. App'x 243, 245 (3d Cir. 2019) ("We need not address this conclusory, undeveloped accusation.") (citations omitted).

## V.    CONCLUSION

For all these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  January 11, 2022                          *s/Norah McCann King*
                                              NORAH McCANN KING
                                              UNITED STATES MAGISTRATE JUDGE